UNITED STATES FIDELITY AND GUARANTY COMPANY, as Subrogee and Assignee of Cooper Communities, Inc., Plaintiff,

v.

BANK OF BENTONVILLE, Nationsbank N.A., f/k/a Boatmen's Bank of Vandalia, Debbie Whited a/k/a Debbie Eugena Whited, and Lawrence Omlor, Defendants.

Civil No. 98–5134.

United States District Court, W.D. Arkansas, Fayetteville Division.

Dec. 9, 1998.

Thomas A. Daily, Daily & Woods, Fort Smith, AR, Mark E. Wilson, Scott L. Schmookler, Clausen Miller, Chicago, IL, for U.S. Fidelity and Guar. Co.

Rickard W. Hood, Hood & Conner, Bentonville, AR, for Bank of Bentonville.

Kimberly W. Tucker, Judy Simmons Henry, Wright, Lindsey & Jennings, Little Rock, AR, for Nationsbank.

Xollie B. Duncan, Bentonville, AR, for Debbie D. Whited.

James G. Lingle, Lingle Law Firm, Rogers, AR, Peter G. Kumpe, Robert F. Thompson, III, Williams & Anderson, Little Rock, AR, for Lawrence Omlor.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Senior District Judge.

This case is before the court on Nations-Bank's motion to dismiss portions of the complaint. Specifically, NationsBank contends count one of the complaint alleging breach of its depository agreement with Cooper Communities, Inc. fails to state a claim because the checks which form the basis of this action were as a matter of law properly payable. With respect to all counts, Nations-Bank contends all claims related to checks paid by NationsBank prior to September 28, 1995, are barred by the applicable statute of limitations. Ark.Code Ann. § 4–3–118(g).

### Background.

Plaintiff, United States Fidelity and Guaranty Company (USF & G), as subrogee and assignee of Cooper Communities, Inc. (Cooper), filed this action on July 10, 1998, against the Bank of Bentonville, Nations-Bank, and Debbie Whited (Whited). On September 28, 1998, an amended complaint was filed. The amended complaint added a defendant, Lawrence Omlor, and two claims against Omlor. For purposes of discussion, we will briefly set forth the allegations of the amended complaint.

At all relevant times, Whited was employed at Bella Vista Village Community as a closing agent/coordinator of finance. Bella Vista Village Community is owned by Cooper. During her term of employment, it is alleged that Whited fraudulently misappropriated and converted funds belonging to Cooper. Specifically, it is alleged that from 1989 through 1997 Whited requested the issuance of numerous drafts to a variety of payees. Instead of forwarding the checks to the payees, Whited allegedly forged their endorsements and deposited the drafts into her own personal bank account at the Bank of Bentonville.

Pursuant to a insurance policy covering, *inter alia,* loss resulting from employee dishonesty, USF & G paid Cooper $754,675.00 as compensation for damages sustained as a result of Whited's fraudulent acts. In exchange for the payment, Cooper assigned its legal claims to USF & G.

Count one of the complaint asserts a breach of contract claim against Nations-Bank. It is alleged that Cooper had at all relevant times a deposit agreement with NationsBank. Under the deposit agreement, NationsBank had authority to charge properly payable and endorsed drafts against Cooper's account. It is alleged NationsBank breached the agreement by charging drafts against Cooper's account checks bearing Whited's improper endorsements.

Count two asserts a failure to exercise ordinary care claim against NationsBank. It is alleged that NationsBank breached its duty to exercise ordinary care by accepting and paying the checks improperly endorsed

by Whited. It is further alleged that NationsBank's failure to exercise ordinary care substantially contributed to Cooper's loss. Count two cites Ark.Code Ann. § 4–3–405(b).

Count three asserts a failure to exercise ordinary care claim against the Bank of Bentonville. Count four asserts a fraud claim against Whited. Count five contains a conversion claim against Whited. Count six contains a breach of fiduciary duty claim against Lawrence Omlor. Omlor, a member or partner of Coopers & Lybrand LLP, now known as Price Waterhouse Coopers, was hired to perform certified public audits of Cooper's financial statements from 1989 to 1997. Finally, count seven asserts a professional negligence claim against Lawrence Omlor.

On October 30, 1998, NationsBank filed a combined motion to dismiss and answer to the amended complaint. That same day, NationsBank was by clerk's notice of deficiency advised that the combined pleading was not in compliance with Local Rule C–7 and that the pleading was filed only as a motion to dismiss not as an answer. To correct this deficiency, NationsBank filed a separate answer on November 3, 1998.

*Discussion.*

■ As noted above, NationsBank now moves to dismiss count one of the complaint and all allegations of the complaint having to do with checks paid prior to September 28, 1995. USF & G first questions the timeliness of the current motion. It points out that NationsBank submitted both an answer and a partial motion to dismiss. USF & G points out that a Rule 12(b)(6) motion should be made before an answer is filed.

■ We reject this argument. First, although NationsBank did attempt to concurrently file an answer and a motion to dismiss, the pleading was filed only as a motion to dismiss and the answer was filed a few days later. Second, as a well known treatise on federal civil procedure points out, "should defendant file a Rule 12(b) motion simultaneously with his answer, the court will view the motion as having preceded the answer and thus as having been interposed in timely fashion." 5A Charles A. Wright & Arthur R.

Miller, *Federal Practice and Procedure* § 1361 at 445 (2d ed.1990).

### 1. Count One—Breach of Contract.

■ NationsBank argues that pursuant to Ark.Code Ann. § 4–3–405(a)(3) Whited was an employee with responsibility for causing checks to be issued in the name of the employer to various payees. As such, NationsBank contends the endorsements, even though fraudulent, are effective and as a matter of law are considered properly payable. Thus, it contends it cannot be held liable for having paid the checks.

In response, USF & G concedes Whited was an employee with responsibility but argues that § 3–405 only gives a drawee bank a defense if the bank acted in good faith when it paid the checks. USF & G argues the amended complaint clearly alleges facts that raise an issue as to whether NationsBank acted in good faith. USF & G argues that NationsBank allowed Cooper to lose over $800,000 for one of two reasons: either NationsBank acted negligently or it breached its contract with Cooper by acting in bad faith.

Section 4–3–405 sets forth the circumstances under which an employer will be held responsible for embezzlement by an employee. Ark.Code Ann. § 4–3–405. It shifts "responsibility in some cases from banks to employers, on the theory that employers are best able to halt embezzlement and ought to bear the burden of failing to do so." 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 19–4 at 253 (4th ed.1995) (hereinafter *White & Summers* followed by the appropriate section number).

Section 3–405 in general applies only when the "embezzler has a particular status in the company." *White & Summers* § 19–4 at 259. *See also* Ark.Code Ann. § 4–3–405(a)(3) (defining responsibility in reference to the status of the employee). The employee must be "entrusted with responsibility with respect to '*the* instrument' at issue in a particular case." *Id.* at 260.

Section 4–3–405(b) provides as follows:

For the purpose of determining the rights and liabilities of a person who, **in good faith,** pays an instrument or takes it for

value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. **If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.**

Ark.Code. Ann. § 4–3–405(b) (emphasis added).

As the commentators note, the risk of loss for fraudulent endorsements by employees who are entrusted with responsibility for checks falls on the employer rather than the bank if the bank was not negligent in the transaction. *Comment 1 to Uniform Commercial Code* § 3–405. However, "[i]f the bank failed to exercise ordinary care, subsection (b) (A.C.A. § 4–3–405(b)) allows the employer to shift loss to the bank to the extent the bank's failure to exercise ordinary care contributed to the loss." *Id.* "The provision applies regardless of whether the employer is negligent." *Id.* "Failure to exercise ordinary care is to be determined in the context of all the facts relating to the bank's conduct with respect to the bank's collection of the check. If the trier of fact finds that there was such a failure and that the failure substantially contributed to loss, it could find the depositary bank liable to the extent the failure contributed to the loss." *White & Summers* § 19–4 at 263.

We have some doubt that an alleged breach of the obligation of "good faith" constitutes a separate cause of action. Nevertheless, it appears NationsBank can assert that § 4–3–405 relieves it of responsibility for the checks only if it acted in good faith. We cannot at this point say that there are no circumstances under which USF & G can recover from NationsBank on this claim.

## 2. All Counts—Statute of Limitations.

NationsBank argues that the applicable statute of limitations is the three year period found in Ark.Code Ann. § 4–3–118(g). Thus, as a matter of law it argues all claims related to checks paid by NationsBank prior to September 28, 1995, must be dismissed.

USF & G concedes that NationsBank points to the correct statute of limitation but argues it applies the statute to the wrong date. According to USF & G, the proper date on which to commence the limitation period under Federal Rule of Civil Procedure 15(c)(2) is July 10, 1995, three years before USF & G filed the original complaint.

Under Rule 15(c)(2) "[a]n amendment of a pleading relates back to the date of the original pleading when … the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). Thus as USF & G contends, the appropriate date is the filing of the original complaint on July 10, 1998. The limitations period therefore commenced on July 10, 1995, not September 28, 1995.

### Conclusion.

For the reasons stated, NationsBank's motion to dismiss will be denied by a separate order entered concurrently herewith.

### ORDER

On this 3rd day of December, 1998, upon consideration of the motion to dismiss filed by NationsBank, the court finds for the reasons stated in a memorandum opinion of even date that said motion should be and hereby is denied. Plaintiff has, however, conceded that it cannot recover for any checks endorsed prior to July 10, 1995.

**IT IS SO ORDERED.**